UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| TINA McCARTHY, an individual; and as the guardian for DARYL McCARTHY, a minor, by and through his mother, TINA McCARTHY; and JUSTIN McCARTHY, a minor, by and through his mother, TINA McCARTHY, <br><br>   Plaintiffs, <br><br>vs. <br><br>GARY UNDERHILL, in his official and individual capacity; MIKE MIERAS, in his official and individual capacity; TOM KALLAY, in his official and individual capacity; WASHOE COUNTY SCHOOL DISTRICT; and DOES 1 through 10, <br><br>   Defendants. | 03:05-CV-0177-LRH-RJJ <br><br> <u>ORDER</u> |

Presently before this Court is Defendants' Motion to Dismiss (# 20)[1]. Plaintiffs have submitted an opposition (# 22), to which Defendants subsequently replied (# 26). Additionally, Plaintiffs have requested the Court take judicial notice of the fact that the Washoe County School District receives federal funding (# 22).

**FACTUAL AND PROCEDURAL BACKGROUND**

The present suit arises out of alleged racial discrimination at Hug High School ("HHS") in the Washoe County School District ("WCSD") manifesting itself in the form of the unlawful detentions and arrests of Plaintiffs Tina McCarthy, Daryl McCarthy and Justin McCarthy

---

[1] All references to (# XX) refer to the Court's docket.

1  ("Tina," "Daryl," and "Justin") by campus police officer Gary Underhill ("Underhill").

2  Daryl is a former HHS student who now attends a charter school in the WCSD. He
3  alleges three instances where Underhill improperly detained or arrested him for being on the
4  HHS campus. The first incident occurred in the first week of September, 2004. Daryl entered
5  the HHS campus to meet his brother Justin, a HHS student. Underhill detained Daryl, asking for
6  identification and the purpose for his visit. Underhill told Daryl he was trespassing on the HHS
7  campus and should not return for any reason. Later that week, on September 7, 2004, Daryl
8  returned to campus, driving his mother Tina's van. The second incident occurred when
9  Underhill noticed Daryl on campus and arrested him for trespassing. The third incident occurred
10 on November 5, 2004. Daryl once again entered the HHS campus to pick up his brother.
11 Underhill detained him, reminded him that he was trespassing and told him he could be arrested.

12 Justin, a current student at HHS, alleges one incident where Underhill improperly
13 detained him. Sometime after the November 5 incident with Daryl, Justin was leaving school
14 with a group of friends. Underhill stopped the entire group and asked if any of them had thrown
15 a rock at the school building. Underhill told Justin that he could not leave until Underhill had
16 finished his questioning, and that if Justin did leave he could be arrested. This was the only
17 interaction between Underhill and Justin during the detention.

18 Tina complains that she was threatened by Underhill every time she objected to his
19 actions on her children's behalf. Specifically, however, Tina alleges that she filed at least two
20 complaints with Tom Kallay and the WCSD but that neither was acted upon. At least one of the
21 complaints was a public complaint and both regarded the alleged discrimination. Tina alleges no
22 action has been taken on these complaints as required by school district administrative
23 regulations.

24 Plaintiffs have now filed the present lawsuit, seeking damages under federal and state law
25 for the discrimination they allege they suffered. Defendants have moved to dismiss the claims.
26 ///
27 ///
28 ///

## LEGAL STANDARD FOR MOTION TO DISMISS

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

## DISCUSSION

Plaintiffs filed the present complaint alleging eleven claims for relief: violation of their Fourth and Fourteenth Amendment rights through 42 U.S.C. section 1983; violation of Title VI, 42 U.S.C. section 2000d; conspiracy in violation of 42 U.S.C. section 1985; complacency to conspiracy in violation of 42 U.S.C. section 1986; battery; false imprisonment; intentional infliction of emotional distress; negligent infliction of emotional distress; violation of Nevada Revised Statute sections 388.132-.135; negligent supervision and training; and violation of administrative regulations. However, in their opposition to Defendants' motion to dismiss, Plaintiffs have acquiesced in dismissal of their claims arising under section 1985, section 1986 and Nevada Revised Statute sections 388.132-.135. Thus, the Court will dismiss these claims and will not discuss them further in this order.

///

**A.     FEDERAL CLAIMS**

Through the briefing of the motion to dismiss, the Court has been notified of refinements to the federal claims brought in this matter. Specifically, the Title VI claim is brought only by Justin, and only against the WCSD. This was done because individual defendants cannot be sued under Title VI. Further, the request for punitive damages under Title VI has been dropped, as Title VI does not allow for such an award. The section 1983 claim, however, is brought by all plaintiffs and is against all defendants.

*1.     Title VI of the Civil Rights Act of 1964 Claim*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To properly plead a cause of action, a plaintiff must allege both that the defendant is an entity engaging in racial discrimination and that it is receiving federal funding. *Fobbs v. Holy Cross Health System Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled in part on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

Defendants have argued that Plaintiffs failed to provide allegations sufficient for the federal funding requirement, and that the claims should be dismissed. Plaintiffs have responded by requesting this Court to take judicial notice of the fact that the WCSD is a federally funded entity. This Court may take judicial notice of facts that are generally known within the Court's jurisdiction or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Such information is clearly the type known within the territorial jurisdiction. Accordingly, the Court will take judicial notice of the fact that the WCSD is a federally funded entity.

Tina and Daryl are not bringing Title VI claims as they admit they are not proper plaintiffs.[2] Thus, only Justin remains. Justin is a student at HHS, satisfying the remaining

---

[2] The court notes that Plaintiffs have alleged Daryl is a student in a charter school which is part of the WCSD. The court believes that such an allegation is sufficient to satisfy the

1  requirements of Title VI, as HHS is a part of the WCSD.

2      *2.    Section 1983 Claims*

3      Section 1983 claims have been brought by Tina, Daryl and Justin against all defendants and allege violations of their Fourth and Fourteenth Amendment rights. Defendants argue that the claims raised by Plaintiffs are subsumed by their second claim for relief, seeking compensation for violation of Title VI. The Court notes that the refinements made in the pleadings show that Tina and Daryl are not bringing Title VI claims. Thus, at the outset, the Court can conclude that Tina and Daryl's section 1983 claims are not subsumed by any Title VI claims. In addition, Defendants argue that any claims not subsumed are barred as to the individual defendants under the doctrine of qualified immunity.

    Also, the court is cognizant of Defendants' arguments made pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Specifically, Defendants argue that a favorable judgment on Plaintiffs' section 1983 claim would imply that any juvenile proceedings against Plaintiffs' following their arrests are invalid.[3] Therefore, Defendants argue that *Heck*'s protections against such collateral attacks serve as a bar to one or more of Plaintiffs' section 1983 claims. At this stage of the proceedings, the facts relative to a *Heck* argument are not clearly before the court. For this reason, the court will reserve ruling on this issue at this time.

///

---

requirements of a Title VI claim. However, Plaintiffs have also acquiesced to Defendants' argument that Daryl is not a proper Title VI plaintiff and dismissed any Title VI claim involving Daryl. The court does not have sufficient briefing before it to determine whether Daryl is a student of the WCSD and therefore a proper Title VI plaintiff. If he is, he would be entitled to bring a Title VI claim but would be barred from bringing certain 1983 claims. Thus, the court will proceed assuming, as the parties have, that Daryl is not a proper Title VI plaintiff. Should further facts come to light the court will revisit the issue to determine the proper claims that should be brought by Daryl.

[3] At the motion to dismiss stage any external documents relating to criminal and or juvenile court proceedings against Plaintiffs are not properly before the court. Thus, while there are allegations that Daryl was arrested, and proceeded against in juvenile court, for trespassing, the court is not in a position to consider any arguments regarding how *Heck's* bar to collateral attacks may affect Plaintiffs' 1983 actions.

a.  Subsuming Analysis

Justin has brought two section 1983 claims in the present lawsuit. The first is a claim for violation of his equal protection rights, the second a claim for violation of his due process rights. Defendants have moved to dismiss both section 1983 claims, arguing they are subsumed by Justin's Title VI claim because the conduct giving rise to the claim arises out of the same facts as the Title VI claim.

42 U.S.C. § 1983 supplies a cause of action to a plaintiff when a person acting under the color of law deprives that plaintiff of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States.]"  However, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981). In determining whether an act subsumes a section 1983 action, the court must determine whether Congress intended that act to supplant any remedy that would otherwise be available under section 1983. *Id*. at 21. Such Congressional intent may be found directly in the statute creating the right or inferred when the statutory scheme is incompatible with individual enforcement under section 1983. *City of Rancho Palos Verdes, Cal. v. Abrams*, 125 S.Ct. 1453, 1458 (2005). The defendant bears the burden of demonstrating that Congress has expressly withdrawn the section 1983 remedy. *Golden State Transit Corp. v City of Los Angeles*, 493 U.S. 103, 107 (1989).

The Ninth Circuit has not decided the specific issue of whether section 1983 is subsumed by Title VI. However, the Ninth Circuit has recognized the Supreme Court's *Sea Clammers* doctrine when construing other federal statutes and found that those statutes precluded a section 1983 remedy. *See, e.g.*, *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999); *Dep't of Educ., State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir. 1984). In addition, the District of Nevada has recognized that a section 1983 action is barred in the context of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*. *Henkle v. Gregory,* 150 F.Supp.2d 1067 (D. Nev. 2001).

In the present case, this court is called upon to decide whether Title VI serves to bar an

action brought pursuant to section 1983. While Title VI does not explicitly purport to limit section 1983 relief, 42 U.S.C. § 2000d, congressional intent to foreclose such a remedy can still be inferred from the creation of a comprehensive statutory scheme. *Sea Clammers*, 453 U.S. at 20. Therefore, the first question this court must decide is whether Title VI is sufficiently comprehensive to demonstrate the congressional intent to foreclose a section 1983 remedy. If Title VI is sufficiently comprehensive, the court must determine whether Plaintiffs' section 1983 claims seek to remedy conduct that is within the scope of Title VI. Only section 1983 claims that are within the scope of a comprehensive statutory scheme are subsumed by that scheme. *See Smith v. Robinson*, 468 U.S. 992, 1003 n.7 (1984) *superseded by* Education of the Handicapped Act, § 615(e)(4), as amended, 20 U.S.C. § 1415(e)(4).

The courts are split as to whether Title VI subsumes section 1983. The Seventh Circuit[4] and the Western District of New York[5] have found that Title VI is sufficiently comprehensive to preclude a plaintiff from bypassing its enforcement mechanisms through a section 1983 action. Conversely, The Third Circuit[6] and the First Circuit[7] have found that Title VI is not sufficiently comprehensive. After examining the relevant case law and the statutory scheme of Title VI, this court finds that Title VI is sufficiently comprehensive to evince congressional intent to foreclose a section 1983 remedy.

As mentioned previously, this district has found that Title IX is sufficiently comprehensive to foreclose a section 1983 remedy. *Henkle*, 150 F.Supp.2d at 1074. Title IX was patterned after Title VI and is enforced and interpreted in the same manner as Title VI. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (citations omitted); *Alexander v. Sandoval*, 532

---

[4] *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 641 (7th Cir. 1999).

[5] *Bayon v. State Univ. of New York at Buffalo*, 2001 WL 135817, *3 (W.D.N.Y. 2001).

[6] *Powell v. Ridge*, 189 F.3d 387, 402 (3rd Cir. 1999) *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001).

[7] *Cousins v. Sec'y of the United States Dep't of Transp.*, 857 F.2d 37, 44-45 (1st Cir. 1988) (indicating that Title VI remedies, sought pursuant to section 505 of the Rehabilitation Act of 1973, are not "so comprehensive as to indicate a congressional intent to foreclose alternate avenues of relief").

U.S. 275, 280 (2001) (citations omitted). As with Title IX, the court finds that Title VI contains a comprehensive administrative enforcement scheme.[8] *See* 34 C.F.R. § 100.1 *et seq.*; *Henkle*, 150 F.Supp.2d at 1073.

Title VI's administrative scheme allows persons who believe they were discriminated against to file a written complaint with the responsible department official. 34 C.F.R. § 100.7(b). A complaint that indicates noncompliance with Title VI triggers a prompt investigation. 34 C.F.R. § 100.7(c). If the investigation reveals a failure to comply with Title VI, the department will take steps necessary to ensure compliance. 34 C.F.R. §§ 100.7, 100.8, 100.9. Although these regulations do not provide a monetary remedy for a complainant who was discriminated against, the regulations do provide a process designed to effectuate compliance with Title VI. A federally funded entity that does not comply with Title VI may ultimately lose its federal financial assistance. 34 C.F.R. § 100.8. In addition to the administrative remedies, Title VI contains an implied private cause of action through which individuals can obtain both injunctive relief and damages. *Sandoval*, 532 U.S. at 279.

An additional consideration in determining whether a particular statutory scheme should bar a section 1983 action, apart from administrative and private remedies, is whether that scheme provides a more restrictive private remedy for statutory violations than would otherwise be available pursuant to section 1983. *Abrams*, 125 S.Ct. at 1458. In the context of Title VI, the Supreme Court has recognized that the available remedies should sometimes be limited to declaratory and injunctive relief. *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 595-97 (1983). Furthermore, a Title VI plaintiff can only seek recovery from the recipient of the federal funding. *Shotz v. City of Plantation*, 344 F.3d 1161, 1169-70 (11th Cir. 2003). In other words, individuals may not be held liable under Title VI. *Id.*

Given the fact that Title VI offers an administrative enforcement scheme, a private right of action and damages that are more restrictive than those available through section 1983, the court finds that a remedy under section 1983 for conduct within the scope of Title VI would be

---

[8] In fact, Title IX relies on many of the provisions applicable to Title VI. 34 C.F.R. § 106.71.

incompatible with Title VI.  *See Abrams*, 125 S.Ct. at 1458.  Title VI provides the exclusive mechanism for recovery to individuals who were discriminated against on the basis of race by any program or activity receiving federal financial assistance.  *See* 42 U.S.C. § 2000d.

Although the court has concluded that Title VI subsumes a section 1983 remedy, the inquiry does not end here.  The next question seeks to determine which section 1983 remedies are subsumed by Title VI.  In *Henkle*, the court stated that the plaintiff could not bring a constitutional equal protection claim based upon the same facts as a Title IX claim.  150 F.Supp.2d at 1074.  Relying on *Smith*, the *Henkle* court found that "it would be inconsistent to allow a plaintiff to circumvent [the Title IX] scheme by pursuing an equal protection claim under § 1983 based upon the same set of facts." *Id*.  This inconsistency would result from allowing a plaintiff to bypass the scheme Congress created to remedy such violations.  However, this reasoning is inapplicable where a plaintiff brings a cause of action pursuant to section 1983 to redress conduct that is outside the scope of the statutory scheme.  *See Smith*, 468 U.S. at 1003 n.7 ("Claims not covered by the EHA should still be cognizable under § 1983, with fees available for such actions.").

In the case at bar, Plaintiffs' first cause of action, brought under section 1983, alleges violations of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  In order to determine whether these claims for relief are subsumed by Title VI, the court must determine whether Title VI proscribes the alleged conduct for which Plaintiffs are seeking relief.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Plaintiffs' Equal Protection claim alleges that they were denied the same treatment as other students on account of their race.  The court finds that such allegations fall squarely within the conduct that Title VI was designed to remedy.  Title VI essentially proscribes conduct that would violate the Equal Protection Clause of the Fourteenth Amendment.  *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only those

1  racial classifications that would violate the Equal Protection Clause of the Fifth Amendment.")._
2  However, as previously discussed, the remedies available under Title VI are different than those
3  that would otherwise be available pursuant to section 1983.  Because Congress enacted a
4  statutory scheme sufficiently comprehensive to remedy racial discrimination committed by an
5  entity receiving federal financial assistance, a plaintiff cannot pursue a section 1983 remedy for
6  the same conduct.

7  The Court, however, reaches a different result with respect to Plaintiffs' Fourth
8  Amendment claims.  Plaintiffs allege that their detentions and arrests were made without
9  probable cause or reasonable suspicion.  The Court finds that this claim is not subsumed by Title
10 VI as Title VI was not intended to remedy instances of unreasonable seizures in violation of the
11 Fourth Amendment. Although Plaintiffs allege a discriminatory motive behind their arrests, the
12 cause of action asserts a claim for unreasonable seizure rather than discrimination.

13  b.  Qualified Immunity

14  After the foregoing discussion on whether claims brought under section 1983 are
15 subsumed by Title VI, the court is left with the following section 1983 claims: (1) Tina versus all
16 defendants on both claims; (2) Justin versus all defendants on the due process claim; and (3)
17 Daryl versus all defendants on both claims.  Defendants argue that the claims against the
18 individual defendants, Underhill, Kallay and Mieras, should be dismissed under the doctrine of
19 qualified immunity.

20  State officials are provided with a qualified immunity against section 1983 claims
21 "insofar as their conduct does not violate clearly established statutory or constitutional rights of
22 which a reasonable person would have known." *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th
23 Cir. 2005); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This immunity is granted broadly
24 and "provides ample protection to all but the plainly incompetent or those who knowingly violate
25 the law." *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (quoting *Malley v. Briggs*,
26 475 U.S. 335, 341 (1986)).

27  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step
28 evaluation of qualified immunity, which has also been adopted by the Ninth Circuit.  *See, e.g.*,

*Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The first step taken by the court is to make a constitutional inquiry by determining the following issue: "based upon the facts taken in the light most favorable to the party asserting the inquiry, did the officer's conduct violate a constitutional right?" *Johnson*, 340 F.3d at 791 (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)); *Saucier*, 533 U.S. at 201. If the court finds that the officer's conduct violated a constitutional right, the second step of the *Saucier* analysis is that the court determine whether the officer is entitled to qualified immunity. *Johnson*, 340 F.3d at 791-92. As part of its qualified immunity analysis, the court should consider whether the law governing the conduct was clearly established when the conduct occurred. *Robinson v. Solano County*, 278 F.3d 1007, 1012 (9th Cir. 2001) (en banc). If the right violated was clearly established, the court should also decide "whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Id*. at 201-02; *Saucier*, 533 U.S. at 201-05.

The first step in the two-step process is intended to "set forth principles which will become the basis for a holding that a right is clearly established." *Saucier*, 533 U.S. at 201. If a court were to skip this initial step, "[t]he law might be deprived of this explanation," *Id*., thereby inhibiting the development of Fourth Amendment law. *See Robinson*, 278 F.3d at 1012. It is therefore necessary to first consider the constitutional inquiry. Only if the court determines that Plaintiff's Fourth Amendment rights were violated will the court address the immunity issue. *Johnson*, 340 F.3d at 794-95; *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

       i.     Tina's Claims

The action giving rise to a section 1983 claim by Tina against the individual defendants is the school administrators' failure to move forward on her complaints of discrimination in violation of the Fourteenth Amendment. There are no allegations in the complaint that the failure to proceed on Tina's complaints by the individual defendants was based on Tina's race. *Cf. Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1032 (9th Cir. 1998) (dismissing claim based on school assigning books with objectionable racist language while

11

noting that allegations of racism in the school would be actionable). While there are allegations that a custom of failing to investigate claims within the administration led to the lawless arrest and detentions of her children, the underlying section 1983 claim cannot be based on *respondeat superior*, but instead must be based on individual actions of the defendants that lead to a constitutional deprivation of Tina's rights. *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003). The failure to plead refusal to act based on race as opposed to discretionary determinations of the validity of the complaint is fatal as even in the light most favorable to Plaintiff there are no facts which would suggest her individual rights were violated by the individual defendants. Accordingly, further analysis under qualified immunity need not be undertaken.

        ii.       *Justin's Claim*

Justin has only one claim surviving under section 1983, the complaint that he was improperly detained by Underhill as he walked away from school. The court has reviewed the facts and, taken in the light most favorable to Justin, they show that he was detained with a large group of friends for the limited purpose of determining if any of those students had thrown a rock at the school building. No facts or allegations suggest that Underhill's purpose for detaining the group was pretextual. An officer is entitled to make brief investigatory stops when there is a reasonable suspicion that a crime has been committed. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). Any allegations of the officer's subjective intent for making the stop is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that reasonableness of traffic stops does not depend of the actual motivations of the individual officer so long as probable cause exists for the stop). The only conclusion that can be drawn from these facts is that Underhill properly detained Justin in his attempt to determine who had thrown the rock. Such a detention is not a violation of Justin's Fourth Amendment rights. Since Justin's rights were not violated, Kallay and Mieras cannot be responsible for any custom or policy leading to a deprivation of his civil rights.

        iii.      *Daryl's Claims*

Daryl's section 1983 claims are based on three incidents involving Underhill. The first incident occurred in the first week of September, 2004, when he was on the HHS campus,

apparently to meet his brother. Daryl was detained by Underhill, told he was trespassing and informed that he should not return to campus for any reason. The second incident occurred on September 7, 2004, when Daryl once again entered the HHS campus, this time driving his mother's van into the parking lot. Daryl was arrested for trespassing by Underhill on this occasion. The third incident occurred on November 5, 2004, when Daryl once again entered the HHS campus and was detained by Underhill for trespassing. The facts presented by Plaintiffs demonstrate that Daryl was not a HHS student the times he was detained on campus. Nor do the facts demonstrate that either detention Daryl suffered was anything greater than an investigatory stop based on the reasonable suspicion that he did not belong on campus, as allowed by *Terry v. Ohio*, 392 U.S. 1 (1968). In addition, the court finds nothing inappropriate about the arrest on September 7. The facts do not demonstrate that Underhill exceeded his authority in effectuating an arrest, and do not contradict the fact that Daryl had been stopped as a trespasser less than a week earlier, told not to return to campus, and then was found on campus. Such a scenario demonstrates that probable cause existed from Underhill's knowledge of their previous encounter to allow for the arrest.

Accordingly, when the court considers the lower expectations of privacy one must have when on a public school's campus, *New Jersey v. T.L.O.*, 469 U.S. 325, 339 (1985), and the logical conclusion that a non-student visitor must also lower their expectations of privacy, *United States v. Aguilera*, 287 F.Supp.2d 1204, 1209 (E.D.Cal. 2003), it becomes apparent that Daryl's Fourth and Fourteenth Amendment rights were not violated when he was stopped and asked for identification and the purpose of his presence. Further, an officer with knowledge that an individual is trespassing does not violate that person's rights by making an authorized arrest.

Daryl has also raised a claim that Kallay and Mieras are also responsible for the Fourth Amendment violation he claims to have suffered. As noted when discussing Justin's claim, since Daryl suffered no Fourth Amendment violation at the hands of Underhill he cannot show that Kallay and Mieras created a custom or policy that led to the violation of his civil rights.

///

///

**B. State Law Claims**

In addition to the federal claims discussed above, Plaintiffs also bring state law claims alleging battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision and training, and violation of administrative regulations.

Defendants argue they are entitled to immunity on these claims pursuant to Nevada Revised Statute section 41.032. Specifically, Defendants argue the actions of all Defendants were discretionary acts that cannot form the basis for a lawsuit in Nevada.

> Section 41.032(2) of the Nevada Revised Statutes provides as follows: no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is: [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor or any of these, whether or not the discretion involved is abused.

Nev. Rev. Stat. § 41.032. "Discretionary acts are those which require the exercise of personal deliberation, decision and judgment." *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354 (Nev. 1987) (citing *Parker v. Mineral County*, 729 P.2d 491, 493 (Nev. 1986)). An action can be brought, however, if the acts in question are merely "'ministerial,' amounting only to obedience to orders, or the performance of a duty in which the officer is left no choice of his own." *Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 934 (Nev. 1994).

*1. State Claims Arising Directly From Arrest*

The Nevada Supreme Court has specifically concluded that a police officer's decision to make a traffic stop and arrest a person for failing to sign a traffic ticket are discretionary acts because they require the officer to use his judgment. *Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998). In the present case, Underhill used his discretion to determine when to detain Plaintiffs and how to treat them once detained. *See Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 933 (Nev. 1994) (holding officer's decision to handcuff suspect behind back instead of in front despite complaints of medical problems was discretionary). Accordingly, all state law claims arising directly out of Plaintiffs' detention by Underhill are dismissed under Nevada's state immunity law. These claims are battery, false imprisonment, intentional infliction of

emotional distress and negligent infliction of emotional distress.

   *2. Negligent Supervision and Training*

This court has held that the supervision and training of employees is not a discretionary act subject to immunity under Nevada Revised Statute 41.032. *Herrera v. Las Vegas Metro. Police Dep't.*, 298 F.Supp.2d 1043, 1054-55 (D. Nev. 2004). In addition, viewing the complaint in the light most favorable to Plaintiffs, the court cannot say that a claim for negligent supervision and training has not been stated. Plaintiffs have alleged that previous incidents occurred which demonstrated to Defendants that they were negligent in their supervision or training of Underwood. As such, Plaintiffs have pled the minimal requirements of the tort. *See Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996) (noting that an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their position").

   *3. Violation of Administrative Regulations*

Plaintiffs bring this claim pursuant to WCSD Administrative Regulation 5144.21. The WCSD Administrative Regulations do not provide an explicit private right of action for violations of their requirements. However, in certain circumstances courts will imply a private right of action into a statutory scheme. *See Cort v. Ash*, 422 U.S. 66, 78 (1975) (noting the four factors to consider when determining whether a private right of action should be implied are (1) whether the plaintiff was one of the class for whose special benefit the statute was enacted; (2) whether there was an indication of legislative intent to create or deny such a remedy; (3) whether the remedy was consistent with the underlying purposes of the legislative theme; and (4) whether the cause of action was one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law)[9]; *see also Sports Form, Inc. v. LeRoy's Horse*

---

[9] Some courts consider the *Cort* four factor test to be implicitly overruled and reduced to a single factor test seeking to determine the congressional intent behind a statute. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 308 (6th Cir. 2000). However, the Ninth Circuit - although recognizing the potential conflict between *Cort* and subsequent Supreme Court cases - and the Nevada Supreme Court still consider the full four factor test relevant to determining if a private right of action exists. *See First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121-22

1 & *Sports Place*, 823 P.2d 901, 902 (Nev. 1992) (noting the factors in *Cort* are helpful for determining private right of actions in state statutes as well).

In this matter Plaintiffs are part of the class for which the regulations were created. However, it is clear that the regulations do not contemplate a private cause of action for damages arising out of a failure to follow the regulations and that such a remedy would be inconsistent with the goal of the regulations; namely encouraging the school district and its students to work together and within the system to resolve grievance disputes based on perceived discrimination.[10] In fact, the regulations provide an alternative avenue to the court system, without foreclosing that option, by which an aggrieved may attempt to resolve disputes. In essence, the school district gives individuals the ability to resolve their problems internally if they wish, without mandating that they give up their legal rights. When weighed in this light, the relevant factors discussed in *Cort* do not imply a private right of action in the WCSD Administrative Regulations that would allow an aggrieved student to sue the WCSD based on a violation of those regulations. Accordingly, Plaintiffs' claim for relief must be dismissed.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (# 20) is GRANTED in part and DENIED in part as discussed in this order.

DATED this 16th day of February, 2006.

_____
LARRY R. HICKS
United States District Judge

---

(9th Cir. 2000). Thus, the four factor test is the appropriate test for determining whether a private right of action exists in an action governed by Nevada state law.

[10] The regulation provides a brief note on its purpose and scope, stating: "The best solutions are those that involve input from those closest to the concern. . . . At any time, a student may choose to initiate the following grievance procedure along with having the legal right to file a grievance with . . . a court of competent jurisdiction. . . ." WCSD Reg. 5144.21 at 3. Thus, the grievance procedure is designed as an alternative to litigation in the courts with the purpose of using those closest to the situation to work out an amicable solution outside of the court system.